UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Application of Passport Special Opportunities Master Fund, LP for an Order Directing Discovery from Deloitte Touche Tohmatsu Limited and Deloitte LLP Pursuant to 28 U.S.C. § 1782 | 16 MISC 033 (PAE) |

**RESPONDENT DELOITTE TOUCHE TOHMATSU LIMITED'S OPPOSITION TO PETITIONER PASSPORT'S MOTION TO COMPEL**

**LATHAM & WATKINS LLP**

James J. Farrell
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
james.farrell@lw.com

*Attorneys for Respondent*
*Deloitte Touche Tohmatsu Limited*

February 9, 2016

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 4

A. Passport's Dispute with a Pakistani Entity, ARY ..... 4

B. The Current Discovery Dispute ..... 5

1. The Requested Letter is in Pakistan ..... 5

2. DTTL Has No Authority to Obtain the Letter ..... 6

III. ARGUMENT ..... 7

A. DTTL Lacks Possession, Custody, or Control of the Letter ..... 7

B. Passport Fails to Satisfy the Requirements of 28 U.S.C. § 1782 ..... 9

1. Standards of Law Under Section 1782 ..... 9

2. Courts in this Circuit Have Held that Section 1782 Does Not Reach Documents Held Abroad ..... 10

3. The Evidence Does Not Meet the "For Use" Requirement ..... 12

4. Passport is Not an "Interested Party" ..... 15

5. Discretionary Factors Weigh Against Production of the Document ..... 15

a. The SECP and Karachi Court Maintain the Ability to Obtain the Documents Located Within Pakistan ..... 16

b. Pakistani Courts May Likely Find U.S. Involvement Unfavorable ..... 17

c. Passport Seeks to Circumvent Pakistani Discovery Rules ..... 17

C. Passport's Three Points in its Motion to Compel are Unavailing ..... 18

1. DTTL Did Not Waive its Objections ..... 18

2. DTTL's Opposition Does Not Turn on Pakistani Law ..... 19

3. International Comity Has No Bearing on DTTL's Opposition ..... 20

IV. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re AM Int'l Inc Sec. Litig.*, 606 F.Supp.600 (S.D.N.Y. 1985) ....................9

*Aventis Pharma v. Wyeth*, 2009 WL 3754191 (S.D.N.Y. Nov. 9, 2009) ....................17

*In re Babcock Borsig AG*, 583 F.Supp.2d. 233 (D. Mass. 2008) ....................13

*Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) ....................10

*CINAR Corp. Securities Litigation*, 186 F.Supp.2d 279 (E.D.N.Y. 2002) ....................20

*In re Digitechnic*, 2007 WL 1367697 (W.D. Wash. May 8, 2007) ....................13

*In re Godfrey*, 526 F. Supp. 2d 417 (S.D.N.Y. 2007) ....................10, 11, 18

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ....................10, 13, 15, 17

*Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) ....................10, 12, 15

*In re Kreke Immobilien KG*, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ....................16, 18

*In re Kreke Immobilien KG*, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ....................10, 16

*In re Lernout & Hauspie Securities Litigation*, 230 F.Supp.2d 152 (D. Mass. 2002) ....................9

*In re Malev Hungarian Airlines*, 964 F.2d 97 (2d Cir. 1992) ....................10

*In re Mare Shipping Inc.*, 2013 WL 5761104 (S.D.N.Y. Oct. 23, 2013) ....................17

*In re Maxwell Comm'n Corp.*,
93 F.3d. 1036 (2d Cir. 1996)....................20

*In re Metallgesellschaft*,
121 F.3d 77 (2d Cir. 1997)....................10

*In re Microsoft Corp.*,
428 F.Supp.2d 188 (S.D.N.Y. 2006)....................11, 16, 18

*Motorola Credit Corp. v. Uzan*,
02 Civ. 666 (JSR) slip op. (S.D.N.Y. Feb. 19, 2003)....................8

*In re Nortel*,
2004 WL 2149111 (S.D.N.Y. Sept. 23, 2004)....................7, 8

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*,
2004 WL 112948 (S.D.N.Y. Jan. 22, 2004)....................9

*United States v. Deloitte & Touche USA LLP*,
623 F. Supp. 2d 39, 41 (D.D.C. 2009), *overturned in part on other grounds*,
610 F.3d 129 (D.C. Cir. 2009)....................8

*In re Vitamin C Antitrust Litigation*,
2012 WL 5879140 (E.D.N.Y. Nov. 21, 2012)....................7

**STATUTES**

28 U.S.C. § 1782....................*passim*

28 U.S.C. § 1782(a)....................15, 17

**RULES**

Fed. R. Civ. P. 34(a)....................7

Fed. R. Civ. P. 45....................1, 18

**OTHER AUTHORITIES**

Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals*, 25 SYRACUSE J. INT'L L. & COM. 1 (1998)....................11

Deloitte Touche Tohmatsu Limited ("DTTL") submits this memorandum in opposition to Passport Special Opportunities Master Fund, LP's ("Passport") Motion to Compel Compliance with Subpoena ("Motion"). For the reasons set forth below, Passport's Motion should be denied.

## I. INTRODUCTION

Passport's motion to compel a March 16, 2013 letter (the "Letter") from a Pakistani company, ARY Communications Ltd. ("ARY"), to ARY's former auditor in Pakistan, M. Yousuf Adil Saleem & Co. ("Deloitte Yousuf Adil"), should be denied because: 1) Passport seeks to compel production of the Letter from DTTL – not the Pakistani accounting firm that has the Letter or ARY, the Pakistani company that sent it – and DTTL does not have possession, custody or control over the Letter; and 2) Passport has not satisfied the necessary elements under Federal Rule of Civil Procedure 45 or 28 U.S.C. § 1782 ("Section 1782") to subpoena the Pakistani Letter from DTTL, particularly given the fact that the Letter is not in the United States, Passport has several active cases where it could request the Letter directly from either ARY or Deloitte Yousuf Adil, and there is no need for the document to assist in an ongoing foreign action.

Passport describes its long and frustrating litigation with a Pakistani company, ARY, which resulted in Passport obtaining an International Chamber of Commerce ("ICC") arbitration award against ARY in 2012. As part of its efforts to force ARY to pay that award, Passport has sued to enforce the judgment in several locations. Passport now seeks to obtain the Letter, which Passport claims is a forgery, purportedly because the Letter can somehow be used to add pressure to ensure ARY's payment of the ICC award. These events are largely irrelevant to the pending motion. While Passport's history with ARY might be frustrating, there is no basis for its

current motion to compel the Pakistani Letter from DTTL, which does not have the document and never did.

DTTL is a membership organization which provides no services directly to clients. Rather, it sets standards and licenses the Deloitte brand to the independent firms that are members of the Deloitte network. DTTL does not have the Letter and cannot obtain it from Deloitte Yousuf Adil. Passport knows that the Letter is in Pakistan in ARY's and Deloitte Yousuf Adil's possession, but Passport refuses to compel the document directly from the parties that have it. Instead, Passport has, for unknown reasons, chosen to subpoena DTTL. This Court should not condone Passport's attempt to short cut the proper means of getting the Letter, nor Passport's request to create new precedent, which would transform any international entity into a document repository for other entities around the world.

Passport argues that DTTL should be compelled to produce the Letter for three reasons – all of which ignore the fact that DTTL does not have the Letter. First, Passport argues that DTTL waived its ability to object to the subpoena because DTTL allegedly failed to timely object. But Passport's own evidence shows that it did not successfully serve the subpoena on DTTL. Passport knew this when Deloitte US's counsel wrote to Passport just days after the attempt at service. DTTL attempted to help Passport by repeatedly explaining that it did not have the document and directing Passport to the relevant parties in Pakistan. When Passport later threatened to file a motion to compel against DTTL in connection with a subpoena that had never been served, DTTL retained counsel. Passport served the subpoena on DTTL's counsel on November 5, 2015 and objections were timely served on November 18.

In any event, the notion that DTTL waived its objections is a red herring because DTTL is not resisting the subpoena based on an objection concerning the scope or burden or even

privilege here. Rather, DTTL simply does not have the document. It is in Pakistan, and DTTL has no power to obtain it. Passport asks this Court to simply gloss over that reality and order DTTL to produce the Pakistani Letter, which would create an unworkable order and set a precedent to allow litigants to compel any entity in the U.S. to obtain and produce documents from independent, distinct entities around the globe.

Second, Passport argues that DTTL's opposition to providing the Letter turns on Pakistani law. That is another red herring. DTTL does not have the Pakistani Letter, and Passport has avenues both in the U.S. and Pakistan for pursuing the Letter from one of the entities that actually have it. There is no need for this Court to evaluate Pakistani law to agree with DTTL and deny Passport's motion. Neither Section 1782 nor the Federal Rules of Civil Procedure require DTTL to produce a document located in another country in a different entity's possession.

Third, Passport argues that the international comity factors weigh in its favor, including the alleged strong interest that the U.S. has in Passport's litigation with ARY. This, too, is incorrect. Neither party has claimed that a "conflict of laws" exists here, which is a threshold requirement for the Court to conduct an international comity analysis. Also, Passport's argument that the U.S. has the stronger interest in this litigation is contradicted by Passport's original Section 1782 application, where Passport argued that the Letter was intended for use in foreign litigation. There is no U.S. interest in helping Passport (a British Virgin Islands entity) enforce its Singapore arbitration award against a Pakistani entity (ARY). In fact, there is no need for this discovery or Passport's Section 1782 request because Passport has an ongoing litigation against ARY in New York state court, where Passport can seek the document directly from ARY. Also,

Passport has a court case against ARY in Pakistan, where it can also request the document from ARY or Deloitte Yousuf Adil.

In short, DTTL does not have possession of or control over the Pakistani Letter, and Passport cannot establish the necessary elements under Section 1782 to justify interjecting the Court (or DTTL) into its battle with a Pakistani entity. Passport's Motion, and its attempt to make DTTL a source for global document collection, are not supported under U.S. law. Accordingly, Passport's Motion should be denied.

## II. BACKGROUND

### A. Passport's Dispute with a Pakistani Entity, ARY

Passport, a British Virgin Islands entity, invested in a Pakistani company, ARY Communications Limited ("ARY"), in 2008. (Mot. at 3.) In 2009, Passport claimed that ARY breached the terms of the investment agreement and it began an ICC arbitration in Singapore. ARY commenced a court case in Pakistan, which issued an injunction, enjoining the ICC arbitration. (Mot. at 4.) Nevertheless, the ICC arbitration panel issued an award in favor of Passport on February 20, 2012, and Passport has filed various actions to enforce that award, while ARY has taken steps to oppose and resist the award. (Mot. at 4-8.)

As part of Passport's efforts to enforce its arbitration award, Passport and ARY are actively litigating these matters in several court cases where Passport could request the Letter directly from ARY. Specifically, Passport and ARY are involved in a court case in Pakistan and in New York state court. (*See* Decl. of James Farrell ("Farrell Decl."), Exs. A, C, D.) At the time of Passport's Section 1782 application to this Court, Passport and ARY were litigating a third case in federal court in the Eastern District of New York until that was voluntarily dismissed on October 6, 2015. (*See* Farrell Decl., Ex. B, Dkt. No. 11.) In the ongoing New

York state court action and Pakistani court case, Passport could request the Letter through discovery directly from ARY or Deloitte Yousuf Adil, but it has not done so.

Passport also sent a letter to the Securities and Exchange Commission of Pakistan ("SECP") two years ago on January 17, 2014, asking the SECP to open an investigation concerning ARY. (Mot. at 5.) The Pakistani court then issued an injunction staying the SECP case, according to Passport. (*Id.*) DTTL is not a party or participant in any of the various disputes, either in the United States or Pakistan, between Passport and ARY.

### B. The Current Discovery Dispute

#### 1. <u>The Requested Letter is in Pakistan</u>

Passport seeks the Letter, dated March 16, 2013, purportedly on Passport's letterhead, that was allegedly a forgery and sent by ARY to Deloitte Yousuf Adil in Pakistan. (*See* Declaration of Gregory A. Blue ("Blue Decl.") dated January 26, 2016, Ex. A.) According to Passport, the Letter was designed to mislead Deloitte Yousuf Adil, as ARY's auditor, and Deloitte Yousuf Adil showed the Letter to a Passport employee at an October 7, 2013 meeting in Karachi in an attempt to determine if the Letter was authentic. (Blue Decl., Ex. A ¶ 6.)

On June 17, 2015, Passport filed an application for *ex parte* assistance in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782, seeking leave to serve a subpoena for the Letter on DTTL and Deloitte USA. (Mot. at 7.) On June 18, 2015, Judge Paul A. Crotty of the Southern District of New York granted Passport's application (without prejudice to later challenge), and allowed Passport to serve the subpoena on DTTL. (Blue Decl., Ex. E.) None of Passport's other three cases (two in New York and one in Pakistan) were disclosed to the Court in Passport's Section 1782 request. (Blue Decl., Ex. A.)

Passport initially delivered the subpoena to 30 Rockefeller Center Plaza in New York at the Deloitte U.S. member firm in June 2015 and was promptly informed that the subpoena was defective—the documents sought were not described on the limited pages provided. (Declaration of Kevin C. Pecoraro ("Pecoraro Decl."), Ex. 1; Blue Decl., Ex. G.) Passport was also informed it had not served DTTL with the incomplete subpoena. (Blue Decl. ¶ 6; Blue Decl., Ex. G.) Passport did not remedy its lack of service on DTTL until November 5, 2015, when DTTL's outside counsel agreed to accept service and Passport served counsel. (Blue Decl., Ex. I; Farrell Decl. ¶ 9.) DTTL served its responses and objections to the subpoena on Passport on November 18, 2015. (Blue Decl., Ex. L.)

On November 18, 2015, Passport informally requested the Letter directly from Deloitte Yousuf Adil. (Blue Decl., Ex. K.) On November 30, 2015, Deloitte Yousuf Adil responded to Passport's request, through its counsel, noting that under Pakistani accounting laws, rules, and regulations, Deloitte Yousuf Adil cannot voluntarily provide the Letter to Passport without the consent of the former client, ARY. (Blue Decl., Ex. M.) Deloitte Yousuf Adil said that it would ask ARY for such consent. (*Id.*) In December 2015, ARY rejected that request and refused to authorize the release of the Letter. (Blue Decl., Ex. N.) Without ARY's consent, Deloitte Yousuf Adil needs to receive a subpoena to produce the Letter, but Passport has not issued formal discovery for the Letter from Deloitte Yousuf Adil or ARY.

2. <u>DTTL Has No Authority to Obtain the Letter</u>

DTTL is a network organization, which licenses the Deloitte brand name to distinct, legally separate entities that provide professional services in different countries. (*See* Pecoraro Decl. ¶ 10.) Member firms are subject to the laws and professional regulations of the particular country or countries in which they operate. (*Id.*) Each member firm is structured in accordance with national laws, regulations, customs and practices. (*Id.*) DTTL does not have the authority

to and cannot bind or make obligations on behalf of its members. (*Id.* ¶ 13.) Additionally, DTTL, as a membership organization, is not the parent company for any of the Deloitte member firms, including Deloitte Yousuf Adil. (*Id.*) Thus, DTTL lacks the authority to obtain documents from its member firms, including Deloitte Yousuf Adil. (*Id.*)

DTTL is a third party with no interest in the ongoing dispute between Passport and ARY. Unlike Deloitte Yousuf Adil, DTTL has never rendered services to ARY; indeed, DTTL does not provide any accounting or other professional services. (*Id.* ¶ 10.) DTTL's attorneys have not "reviewed" the Letter, as implied in Passport's subpoena. (*Id.* ¶ 12.) According to Passport's own affidavits, the Letter is in Pakistan (not in the U.S.) in the possession of Deloitte Yousuf Adil, a legally separate entity from DTTL. (Blue Decl., Ex. A ¶ 25; Blue Decl., Ex. D.)

## III. ARGUMENT

### A. DTTL Lacks Possession, Custody, or Control of the Letter

DTTL cannot produce documents beyond its possession, custody, and control. Fed. R. Civ. P. 34(a). The Letter, located in Pakistan and purportedly sent from ARY to its Pakistani accounting firm, is not in DTTL's possession, custody or control. In the Second Circuit, "[i]t is the discovering party's burden to demonstrate that the requested entity has either the legal right or the practical ability to obtain the documents in question from their custodian." *In re Nortel*, 2004 WL 2149111, at *2 (S.D.N.Y. Sept. 23, 2004). Passport does not, and cannot, meet its burden to demonstrate that the Letter is within DTTL's possession, custody, or control. *See, e.g., In re Vitamin C Antitrust Litigation*, Nos. 06-MD-1738 (BMC) (JO), 05-CV-0543, 2012 WL 5879140 (E.D.N.Y. Nov. 21, 2012) (reversing magistrate judge's order to produce Deloitte work papers where party seeking discovery failed to establish control or practical ability to obtain documents).

Courts in this Circuit and others have found that Deloitte member firms do not have the legal right or practical ability to obtain documents from one another, or act on another's behalf. *In re Nortel Networks Corp. Sec. Litig.*, No. 01-1855, 2004 WL 2149111, at *1-4 (S.D.N.Y. Sept. 23, 2004) (Dolinger, M.J.); *United States v. Deloitte & Touche USA LLP*, 623 F. Supp. 2d 39, 41 (D.D.C. 2009) (Leon, J.) (Deloitte USA did not possess control over "legally distinct entity" Deloitte Switzerland, implying that the ruling would remain the same under the practical ability standard), *overturned in part on other grounds*, 610 F.3d 129 (D.C. Cir. 2009). In *Nortel*, the Court rejected plaintiffs' efforts to obtain discovery from Deloitte Canada by way of a subpoena on Deloitte USA, even though Deloitte USA provided assistance to Deloitte Canada in an audit. DTTL similarly has no authority to access documents that are in the possession, custody, and control of Deloitte Yousuf Adil, a legally separate entity, which has explicitly noted that it cannot voluntarily turn the Letter over to any party without a formal discovery request, citing implications of Pakistani law and Pakistani accounting regulations. (Blue Decl., Ex. M.)

Moreover, unlike in *Nortel*, the Letter sought is not "plainly relevant" or necessary for Passport to confirm its arbitration award or otherwise vindicate its rights against ARY. *See also Motorola Credit Corp. v. Uzan*, 02 Civ. 666 (JSR) slip op. at 4 (S.D.N.Y. Feb. 19, 2003) (finding Motorola failed to carry burden of showing that DTTL or Deloitte USA had the "legal right, authority, or practical ability to obtain the materials" from Deloitte Turkey despite sharing of documents with Deloitte USA during audit).[1]

Courts have, on several occasions, rejected the notion that separate legal distinctions should be disregarded where a company markets itself as part of an international association or global brand. This "one firm" unified theory, particularly in the accounting firm context, is

---

1 *Motorola* is an unreported decision, a true and correct copy of which is attached as Exhibit E to the Farrell Declaration.

frequently rejected by courts. *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03 Civ. 0613 GBD, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004) (rejecting agency or control relationship between member firms "simply because they shared an associational name and/or collaborated on certain aspects of a transaction"); *In re Lernout & Hauspie Securities Litigation*, 230 F.Supp.2d 152, 170 (D. Mass. 2002) (rejecting plaintiffs' "one firm" theory where KPMG members allegedly "hold themselves forth as a single entity," noting KPMG website's statement that member firms operate as "separate and independent legal entity"); *In re AM Int'l Inc Sec. Litig.*, 606 F.Supp.600, 607 (S.D.N.Y. 1985) (dismissing complaint against Price Waterhouse entities outside the United States and rejecting assertion that worldwide affiliates were "one entity").

DTTL does not provide client services. DTTL did not participate in the audits of ARY that were conducted by Deloitte Yousuf Adil, a Pakistani entity that is distinct from DTTL (Pecoraro Decl. ¶ 12.) DTTL has no authority to obtain—much less compel—the Letter from Deloitte Yousuf Adil, which has stated that it cannot voluntarily produce the Letter without ARY's consent. (Blue Decl., Ex. M.) DTTL does not have possession, custody, or control of the document and petitioners should not be permitted to employ this Court and the Federal Rules of Civil Procedure to obtain a document that it can and should seek directly from the Pakistani entities that have it.

### B. Passport Fails to Satisfy the Requirements of 28 U.S.C. § 1782

#### 1. Standards of Law Under Section 1782

To assist discovery in foreign proceedings, Section 1782 allows, but does not require, a district court in which "a person resides or is found" to order "him to give his testimony or

statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C § 1782 (2015).

Petitioners seeking discovery pursuant to Section 1782 must meet three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery be for use in a proceeding before a foreign tribunal, and (3) the application be made by a foreign or international tribunal or any interested person." *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (quoting *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)). The burden to establish these statutory factors rests on the petitioner, Passport. *See In re Godfrey*, 526 F. Supp. 2d 417, 419 (S.D.N.Y. 2007).

If these threshold factors are satisfied, the district court may grant discovery at its discretion, taking into consideration certain factors outlined by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). This discretion is "not boundless" and must also be exercised in light of the twin aims of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Kreke Immobilien KG*, Misc. No. 13-110, 2013 WL 5966916, at *2 (S.D.N.Y. Nov. 8, 2013); *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997) (quoting *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).

2. Courts in this Circuit Have Held that Section 1782 Does Not Reach Documents Held Abroad

Courts in this Circuit have held that Section 1782 implicitly imposes an additional threshold requirement that the requested documents must be located in the United States. *See In re Kreke Immobilien KG*, Misc. No. 13-110, 2013 WL 5966916, at *4 (S.D.N.Y. Nov. 8, 2013)

(finding Section 1782 does not authorize a court to compel a party to produce documents located abroad, although noting there is no explicit bar); *In re Godfrey*, 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007) (same); *In re Microsoft Corp.*, 428 F.Supp.2d 188, 194 n. 5 (S.D.N.Y. 2006) (same). In *Godfrey*, Judge Rakoff found that "the bulk of authority" in the Second Circuit indicates that a party "cannot be compelled to produce documents located outside of the United States" and, accordingly, denied the motion to compel as the documents sought were located in Russia. *Godfrey*, 526 F.Supp.2d 417, 423 (S.D.N.Y. 2007). Similarly, here, the Letter's foreign location means that this Court cannot and should not order the Letter in Pakistan to be produced under Section 1782.

There are "potent" reasons why the drafters of Section 1782 intended to limit the production of documents to those located in the United States. *See Godfrey*, 526 F. Supp. 2d at 423. Judge Rakoff noted that the purpose of Section 1782 was to help make evidence available in the United States and in doing so created "a harmonious scheme" whereby "[e]vidence in Spain is obtained through proceedings in Spain, evidence in Great Britain is obtained through proceedings in Great Britain, and evidence in the United States is obtained through proceedings in the United States." *Id.* (quoting Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals*, 25 SYRACUSE J. INT'L L. & COM. 1 (1998)). *Godfrey* also provided that a geographic limit to Section 1782 avoids interference with international courts, such as the situation where "litigants in Spain could use Section 1782 to obtain evidence located in Spain that could not be obtained through Spanish proceedings." *Id.* Finally, *Godfrey* noted that the use of Section 1782 to obtain documents located in another country would turn U.S. courts into "clearing houses for requests for information from courts and litigants all over the world in search of evidence to be obtained all over the world." *Id.* (internal citations omitted).

The current discovery dispute illustrates why courts in the Second Circuit limit production of documents to those located in the United States. The Letter sought is in Pakistan, and in accordance with the "harmonious scheme" envisioned by *Godfrey*, should be obtained through proceedings in Pakistan. Section 1782 should not be employed here to circumvent concurrent Pakistani judicial proceedings, where the document can be obtained and the issues litigated. Finally, this U.S. Court should not serve as a "clearing house" for Passport, a British Virgin Islands entity, to obtain a Pakistani letter in the possession, custody, and control of a Pakistani accounting firm.

3. The Evidence Does Not Meet the "For Use" Requirement

Passport does not satisfy the statutory Section 1782 requirement that the evidence sought be "for use in a proceeding before a foreign or international tribunal." In its Section 1782 petition, Passport identified two potential foreign proceedings: (1) a proceeding in the High Court of Sindh in Karachi, Pakistan, that has apparently enjoined a Passport-instigated Securities and Exchange Commission of Pakistan ("SECP") investigation of ARY, and (2) a prospective proceeding in Dubai by Passport to enforce its arbitral award against ARY. (Blue Decl., Ex. A.)[2]

Passport is not sufficiently able to "use" the requested evidence in the Pakistani High Court action or the SECP proceeding, and Passport has not made a sufficient "objective showing" that the prospective Dubai proceeding is within reasonable contemplation. *See Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118-125 (2d Cir. 2015) (finding that Section 1782 petitioner was unable to use the sought-after evidence in ongoing

---

2 Importantly, Passport's petition did not inform Judge Crotty that Passport had two pending cases in New York (one in state court, which is still being litigated, and the other in federal court, the Eastern District of New York, which has since been dismissed), while Passport was asserting that it needed discovery for foreign proceedings. (*See* Blue Decl., Ex. A.)

insolvency proceedings and that planned civil lawsuits in which evidence would otherwise be used were not within reasonable contemplation).

In the Pakistani High Court action, that court has issued several injunctions demanding that Passport stop filing actions around the globe, seeking to enforce the ICC award, including injunctions relating to Passport's U.S. actions. (Farrell Decl., Exs. C, D.) Also, court orders issued by the Pakistani court show that the court has demanded that Passport appear and respond to pending matters, but Passport has failed to appear before the court on at least one occasion in the past year. (Farrell Decl., Ex. D.) So there is no chance that Passport needs the Letter for the Pakistani action, where such international proceedings have been barred and Passport has refused to appear.

Also, Passport could pursue discovery in the Pakistani court directly from ARY or Deloitte Yousuf Adil, but it has not done so. The fact that Passport has the ability to pursue discovery of the Letter in the Pakistani court undermines Passport's assertion that it needs this U.S. Court to order the discovery through Section 1782 for use in the same foreign action. In weighing a discovery request under Section 1782, a district court may "consider a party's failure first to attempt discovery in the foreign jurisdiction." *In re Babcock Borsig AG*, 583 F.Supp.2d. 233, 241 (D. Mass. 2008); *In re Digitechnic*, 2007 WL 1367697, at *4 (W.D. Wash. May 8, 2007) ("[T]he Court is unconvinced that Digitechnic cannot obtain any of the discovery it seeks here via French discovery methods. More importantly, Digitechnic has not even *tried* to obtain any of the discovery sought here by way of French discovery tools") (emphasis in original); *Intel*, 542 U.S. at 264 (noting that there is no apparent need for discovery under Section 1782 if the foreign tribunal can order the discovery).

Similarly, there is no need for the Letter in the SECP action, which according to Passport was stayed by the Pakistani court and therefore cannot support the need for the document. (Blue Decl., Ex. B, Ex. 12 at 2.) That action is not ongoing or reasonably in contemplation as it has been stayed for months, and Passport is not a party to that investigation, whatever its status. Further, there is no evidence presented indicating that the stayed SECP action could be reinstated simply by seeing the Letter. In fact, Passport even concluded that the Letter was not relevant or useful for the SECP action. When Passport wrote to the SECP on January 17, 2014 requesting an investigation, it included 13 pages of details about ARY, including Passport's assertion that ARY's financials misclassified the $5 million it owed to Passport. But Passport did not discuss the Letter – which Passport saw three months earlier. (*See* Blue Decl., Ex. A, Ex. 13 ¶20 -24; Blue Decl., Ex. D ¶ 4.)

The alleged purpose of the Dubai action – to enforce the ICC award – cannot possibly support the need for the document. Passport does not need the Letter to enforce the ICC award; it only needs the award itself. The Letter was written more than one year after Passport's ICC award and several years after Passport's business dealings with ARY in 2008-09 that led to the award, so the Letter cannot have any relevance to the enforcement of that award. Indeed, Passport has filed several actions to enforce its award against ARY without the Letter. The true purpose of the Letter is likely to provide Passport leverage in the form of potential evidence of a more serious, possibly criminal offense by ARY, to twist ARY's arm into paying the award. Such a tactical advantage is not a legitimate use that would support a Section 1782 order.

Finally, given that Passport first claimed that it intended to file a Dubai action almost eight months ago, the assertion that Passport is filing another action now rings hollow. (Blue Decl., Ex. A ¶ 10; Mot. at 15-16.) If Passport would like to file another action to enforce its

award, it does not need the Letter to file such a new Dubai action any more than in the earlier actions it has filed.

4. Passport is Not an "Interested Party"

To show that the requested evidence is for use in a foreign proceeding, the petitioner must demonstrate that the evidence "will be employed with some advantage or serve some use in the proceeding," and further that the petitioner has "some means of injecting the evidence into the proceeding." *Certain Funds,* 798 F.3d at 120. "The key question, therefore, is not simply whether the information sought is relevant, but whether the [petitioner] will actually be able to *use* the information in the proceeding." *Id.*

Passport is not an interested party in the SECP inquiry and it cannot "use" the document in a regulatory matter that it is not a party to. Moreover, if SECP action is stayed, then that action cannot justify the need for the Letter. There is no currently ongoing action, according to Passport, so there is no need or demand for the evidence.

5. Discretionary Factors Weigh Against Production of the Document

Even where a party seeking discovery pursuant to Section 1782 meets the threshold requirements, a court "is not required to grant a [Section 1782] discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). The Supreme Court has provided several factors to guide this exercise of discretion, including but not limited to: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.*

a. The SECP and Karachi Court Maintain the Ability to Obtain the Documents Located Within Pakistan

The first factor examines who is before the foreign tribunal and whether the tribunal has the ability to provide the discovery sought. Where a foreign tribunal maintains the ability to obtain evidence within its own jurisdiction, it is unnecessary to use Section 1782 to compel discovery. *See In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (stating that under the first factor "[t]he relevant inquiry is whether the evidence is available to the foreign tribunal"). The *Microsoft* court found aid under Section 1782 both "unnecessary and improper" where the requesting party could also obtain documents from the government agency involved in the case, instead of a non-party located in the United States. Similarly, in *In re Kreke Immobilien KG*, Misc. No. 13-110, 2013 WL 5966916, at *4 (S.D.N.Y. Nov. 8, 2013), the court reasoned that this first factor weighed against discovery where the foreign tribunal could reach the documents at issue. In *Kreke,* the documents were located in Germany with a subsidiary of Deutsche Bank, and as such the documents were presumably not "beyond the reach of German jurisdiction." *Id.* at *4-5.

The SECP and Karachi courts maintain the legal authority and ability to request evidence from Pakistani entities, including Deloitte Yousuf Adil. The pending action in Karachi court includes Passport and ARY, where the Letter can be sought through the Pakistani discovery process. (Mot. at 3-5.) Passport, ARY, Deloitte Yousuf Adil, and the Letter are all in Pakistan and Passport can seek documents there, which weighs against Passport's attempt to interject the U.S. courts or DTTL into the dispute. Accordingly, this factor weighs against discovery under Section 1782.

b. Pakistani Courts May Likely Find U.S. Involvement Unfavorable

The second discretionary factor under *Intel* directs district courts to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 543 U.S. at 264. Given the Karachi court's earlier order enjoining Passport from attempting to enforce the arbitration award, and its injunction of the SECP investigation, Pakistan may not look favorably upon any U.S. involvement in this dispute. (Farrell Decl., Ex. C; Blue Decl., Ex. C at ¶ 8.)

c. Passport Seeks to Circumvent Pakistani Discovery Rules

This third factor in *Intel* also weighs against production as this factor directs courts to consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. 265.

Courts in the Second Circuit have denied Section 1782 discovery where a party had the opportunity to request evidence in a foreign proceeding, but failed to do so. *See In re Mare Shipping Inc.*, No. 13 Misc. 238, 2013 WL 5761104, at *5 (S.D.N.Y. Oct. 23, 2013) (finding that Section 1782 applicants in the case attempted to "circumvent Spanish proof-gathering restrictions by seeking documents and deposition testimony" in the United States, rather than in a proceeding in Spain); *Aventis Pharma v. Wyeth*, No. M-19-70, 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009) ("[I]n five years, Aventis has never sought the subject § 1782 documents in the French Tribunal. Regardless of whether Aventis could have gotten the French Courts to compel production of the documents now sought, Aventis' motion is clearly an attempt to circumvent foreign proof gathering restrictions . . . .").

Passport cannot seek to circumvent discovery rules in Pakistan, where ARY, Deloitte Yousuf Adil and the purported document are located, by seeking discovery from DTTL, an entity that does not have, and never had, the authority to obtain the document. *In re Kreke Immobilien KG,* No. 13 MISC. 110 NRB, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) (in relation to discretionary factors relevant to Section 1782, the U.S. does not have an interest in encouraging "foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority" in opposition to efficiency and comity goals).

Moreover, the tenuous connection of the Passport/ARY dispute to the United States, as well as strong indications that the Pakistani judiciary would frown upon U.S. encroachment into the dispute, weigh in favor of denying Passport's efforts to circumvent Pakistani judicial processes. *See In re Godfrey*, 526 F.Supp.2d 417, 424 (S.D.N.Y. 2007) (declining to allow discovery of documents located outside of the U.S. "because the [case's] connection to the United States is slight at best and the likelihood of interfering with Dutch discovery policy is substantial"). Where Passport can seek to obtain the Letter, which is located in Pakistan with a Pakistani accounting firm, via the Pakistani judicial system, U.S. courts should not serve as a workaround to obtain documents. *See In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006).

### C. Passport's Three Points in its Motion to Compel are Unavailing

#### 1. DTTL Did Not Waive its Objections

DTTL was served with the subpoena on November 5, 2015, as outside counsel agreed to accept service on DTTL's behalf. (Farrell Decl. ¶ 8.) DTTL served its responses and objections to the subpoena to Passport on November 18, 2015, well within the fourteen day period required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 45(d).

Passport's assertion that DTTL waived its objections to the subpoena is unsupported by the record, including Passport's own evidence, which shows that Passport's earlier attempt to serve the subpoena was defective. Passport initially delivered the subpoena to the Deloitte USA member firm, not DTTL. Deloitte USA quickly informed Passport that the subpoena was incomplete and lacked any description of the documents requested and that the defective subpoena was not served on DTTL. (Pecoraro Decl., Ex. 1; Blue Decl., Ex. G.) On several later occasions, DTTL also told Passport that Passport's initial service was not proper and, moreover, DTTL did not have the document and could not provide it. (Mot. at 5-8; Blue Decl. ¶¶ 7, 8, 10, 13.)

Passport chose to serve the subpoena on DTTL, through its counsel on November 5, 2015 for a reason – it did not properly serve it in June 2015. When Passport's and DTTL's counsel spoke, Passport was again informed that the subpoena was not properly served, that DTTL was a different entity from Deloitte Yousuf Adil, and that DTTL could not access the Letter located in Pakistan. (Farrell Decl. ¶ 9; Blue Decl. ¶¶ 10, 11.) In light of this, Passport's primary argument – that DTTL waived its ability to object to the subpoena – has no merit. DTTL does not have the Letter and it cannot command an independent accounting firm in Pakistan to provide it. Those facts were repeatedly shared with Passport and were not waived by an untimely response.

2. DTTL's Opposition Does Not Turn on Pakistani Law

Passport asserts that DTTL cannot rely on Pakistani law to bar disclosure of the Letter, and that it bears the burden of demonstrating that Pakistani law prevents DTTL from doing so. This argument is a misdirection. On the essential question of whether DTTL has possession, custody, or control of the document, Pakistani law has no bearing on the issue. As indicated in the Motion itself, the entity citing implications of Pakistani law is Deloitte Yousuf Adil, which is separate and distinct from DTTL. (Mot. at 9.) DTTL is not required to demonstrate that

Pakistani law prohibits disclosure of the Letter, and DTTL has not made any assertions of Pakistani law. What prohibits DTTL from producing the document is that it does not have the document, nor can it obtain it, as has been communicated to Passport on several occasions. (Farrell Decl. ¶ 9; Blue Decl., Ex. H.) The Court should not allow Passport to take this dispute down a path of evaluating how Pakistani courts would rule on disclosure of a document located in Pakistan and in the possession of a Pakistani accounting firm.

3. <u>International Comity Has No Bearing on DTTL's Opposition</u>

International comity does not bear on the fundamental issue—that DTTL does not have possession, custody, or control of the Letter. Courts undertake analysis of international comity only when there is a "true conflict" of laws. *In re Maxwell Comm'n Corp.*, 93 F.3d. 1036, 1039 (2d Cir. 1996) ("[i]nternational comity only comes into play when there is a true conflict between American law and that of a foreign jurisdiction"). DTTL has not made and does not make any assertions of Pakistani law or conflicting law, nor is it required to do so. DTTL simply does not have the Letter. So Passport's argument that this dispute – among foreign entities, in connection with the investment in a Pakistani company and a document located in Pakistan – presents an important U.S. interest can simply be ignored. There is no need for an international comity analysis to resolve this discovery dispute. *See CINAR Corp. Securities Litigation*, 186 F.Supp.2d 279, 292 (E.D.N.Y. 2002) (declining to undertake international comity analysis where defendants failed to demonstrate a "true conflict" of laws).

## IV. CONCLUSION

For all of the foregoing reasons, Passport's motion to compel should be denied.

Dated: February 9, 2016
New York, New York

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: /s/ James J. Farrell

James J. Farrell
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: james.farrell@lw.com

*Attorneys for Respondent*
*Deloitte Touche Tohmatsu Limited*